Curia, per O’Neall, J.
The unfortunate destruction of the Circuit decree by fire, has created some embarrassment to *this Court, in ascertaining both the facts of the case and the grounds on which the decree was predicated. It is, on this account, necessary that a summary of the facts which we regard to be important, should be made, in order that the opinion to be expressed may be fully understood.
It appears that Archibald Miller died intestate, leaving no issue but a father or mother, one brother and three sisters, his only heirs and next of kin him surviving. The defendants’ testator administered and sold his personal estate : at that sale Sarah Miller and the complainant, who were two sisters, and heirs of the intestate, purchased to the amount of five hundred dollars, and for the payment of this sum gave their note, under seal, to the defendants’ testator. Upon some occasion, and with a view to settle with a part of the distributees, the defendants’ testator, and the complainant, went before the Ordinary of York District, and he made a statement of the accounts of the administrator, in which he omitted to charge the defendants’ testator with the interest actually paid or due on notes, including the one now in dispute, which he held an account of, and as assets of the intestate’s estate. — By this statement he ascertained the share of each distributee, and decreed it to be paid by the administrator. This statement of the accounts and decree was, however, entirely ex parte; no citation was issued, and none of the distributees, except Mary Miller, were present. Under it, however, some of them gave receipts for the sums at which their shares were erroneously stated by the Ordinary. Soon after this transaction, Harmon Alexander died, leaving a will, of which the defendants are the executors. Mary Miller, *23 supposing herself as one of the heirs of her brother, and as agent for the others, to be entitled to the note of herself and her sister, which she knew to be a part of the assets of his estate, possessed herself of it. The defendants filed a bill in the Court of Equity against her. for a discovery, and to compel her to restore it to them. In the meantime, she took out letters of administration de bonis non, on her brother’s estate. And in her answer she claimed to be allowed, as administratrix de bonis non, to retain it. This Court, on an appeal from the Circuit decree in her favor, thought that she could not be permitted *to put the complainants to proof of their right to the note, in showing that upon a final settlement of the accounts of their testator’s administration, that the sum which it secured to be paid, would be due and owing to him; but that it devolved upon her to be the actor, and to prove from the accounts of the testator’s administration, that he was in arrear to her intestate’s estate, the amount of the note ; and for the purpose of carrying these views into effect, decreed that she should deliver the note to (the then complainants) the present defendants, unless she should within three months after notice file a cross-bill for the discovery of facts necessary to her defence, and prosecute the same to a final decree with all convenient dispatch. Under this decree this bill was filed, and the discovery of the accounts of the defendant’s testator, with the estate of Archibald Miller (deceased) made, and the same were referred to the Commissioner for his report. He reported, “that upon a careful investigation of the whole matter, he is satisfied that the whole amount of the complainant’s note in dispute, with the interest, and a balance of $11 23” cash, in the hands of the defendant’s testator, “ is justly due the estate of Archibald Miller, deceased.” The case was heard at June Term, 1831, and the Chancellor (Johnston) dismissed the cross-bill. During the pendency of the original and cross-bills, the defendants sued at law on the note, and at Spring Term, 1832, of the Court of Common Pleas, recovered judgment on the note against the complainant Mary Miller, Sarah Miller and Major T. Hall, the obligors.
Out of these facts arise two questions; first, does the statement of the accounts, and the decree by the Ordinary, conclude the complainant from demanding in the Court of Equity an account of the administration of Harmon Alexander, on the estate of Archibald Miller (deceased ?) Secondly, if it does not, then is she, as administratrix de bonis non, entitled to receive from the defendants whatever balance their testator is in arrear to his and her intestate ?
1. I entertain no doubt that the statement of the accounts and decree by the Ordinary, is not conclusive between the parties. It was wholly an ex parte proceeding, made up entirely at the instance of the administrator, to enable him to settle with his cestui que trusts. In order to be conclusive, it ought to *be the judgment of the Court, between parties regularly in Court on the same matter, then in issue between them, which is at present. It would then operate as an estoppel between parties and privies in estate or in law. But before it can have this effect, it must appear by the proceedings had before the Ordinary, that the parties to be effected by it were legally in Court. This can only be done by a citation duly served and returned to the Ordinary ; or by an appearance of the parties, by consent, set out and appearing on *24 the face of the decree.' — No citation was issued either to bring in the administrator to account or to require the heirs to attend the settlement of his accounts, no consent appears to have been given to any judicial determination by the Ordinary. Mary Miller was in his office when he commenced the statement, but it does not appear that she was present when he wrote his decree, or that she expected him to do so. It is, however, sufficient to say that from the decree it does not appear that she was a party to it by consent. There can be no doubt that she expected the Ordinary, as any other accountant, to ascertain her share from the papers before him, leaving her at liberty to review and correct his errors. None of the other heirs were present, or in any way assenting to the decree, and as against their rights, it cannot be pretended that it could have any operation. In the complainant’s character of administratrix de bonis non, she now represents the intestate, and upon her rights in that character, whatever they may be, a decree made by the Ordinary before the former administration en$ed, and therefore before she was clothed with the present powers, can have no effect. The conclusiveness of the decree of the Court of Ordinary when regularly made upon all matters of account embraced by it, in the Court of Equity, is matter of doubt. Errors apparent upon the face of it ought to be, and I should think might be, corrected. If a party who has obtained a decree of the Court of Ordinary, has to ask the Court of Equity to give it effect,’ the Court will examine the accounts upon which it is based, and give relief according to the right of the case. The case of M’Cullough v. Daniel, (a) reported in part, in State Equity *Rep. 255, and finally decided by the Court of Appeals, May Term, 1828, is an illustration on this position. If a decree was obtained by fraud or collusion, it might be reviewed and relief granted by the Court of Equity. If it was necessary for the purposes of this case, the complainant might, I think, under the head of either error apparent on the face of the decree, or the fraud of the administrator, have relief against it. For it is manifest on the face of the decree that the interest which ought to have been, is omitted to be charged. This omission, too, was occasioned if not by the moral, at least by the legal fraud of the administrator : he withheld from the Ordinary the facts that he had received interest, and that interest was due on the notes which he then had on account of the estate. But neither of these views are necessary for the purposes of this case : the decree is not conclusive against the complainant, inasmuch as she was not a party by process or consent. It is in this point of view nothing more than a statement of the accounts between the parties to which such receipts as were given have reference. This, it is supposed, is a discharge to the administrator. A receipt has never been supposed to have the effect of a release. It is nothing more than the evidence of so much paid ; and when it purports to be in full, it devolves upon the party who signs it the burthen of showing error or mistake in the settlement on which it is *25 predicated. This has been done in this case, by showing the errors in the Ordinary’s statement of the accounts, and which he himself admitted he had made, by the administrator’s withholding the facts from him.
2. The complainant, as administratrix de bonis non, is entitled to all the goods, chattels, and credits, of her intestate, which were not administered by the former administrator. This is conceded; but it is said, all of the goods, chattels and credits of the intestate, were administered by Harmon Alexander, and therefore the complainant is not entitled to recover. It is true, the administrator did, in a course of administration, sell the goods and chattels, and collect and receive the credits of his .intestate — these' were acts of partial* administration — he thereby charged himself with the nett proceeds, as so much money belonging to his intestate, out of which he was first to pay debts and expenses, and the balance, if any, to distribute and pay to the respective distributees. It may be, and very probably is true, that he paid the debts and expenses ; but the balance, now reported against him, was the money of his intestate, still in his hands to be administered. Upon his death, his legal right to retain it ceased; and upon the grant of administration de bonis non, it passed as the goods, chattels, and credits of the deceased, unadministered by the administrator, Harmon Alexander, deceased, to the complainant. ’ This legal right to receive the unadministered balance of money, in the hands of Harmon Alexander, or rather his executors, did not make her the legal owner of the note in dispute. That, legally, belonged to the administrator, to whom it was payable; and after his death, the right of action upon it passed to his executors. For it was a personal contract made with the administrator, and for its amount he was personally liable to his intestate’s estate. His executors could demand and enforce payment of it. At law, it could not be averred that the proceeds, when collected, could, of right, belong to the obligors, or one of them. For, over the accounts of the administrator, of his consequent liability to the distributees, that Court has no jurisdiction. It merely looks to the legal rights, and not to any equities which may exist. This is the extent of the doctrine contained in the case of Seabrook ads. Williams, 3 M’C. 371. It never was intended to be said, in that case, that because an administrator de bonis non could not sue on a note given to the first administrator, that, therefore, he would not be entitled to recover, in Equity, any unadministered balance which migh be in the hands of the first administrator. .There can be, therefore, no doubt that the complainant is entitled to recover from the defendants whatever sum their testator is in arrear to the estate of Archibald Miller, deceased. Notwithstanding the complainant has no legal right to her own and her sister’s note, yet in Equity she may have the amount to be paid her by the defendants’ set off against it; and if the sum *due her is equal to, or exceeds the amount of the note, if it was in their possession she would have the right to have it delivered to her ; and if (as is the case) it is in her possession, she would have the right to retain it. The judgment at law, predicated upon it, under such circumstances, cannot be allowed to be enforced. At law, the defendants are entitled to the note and the judgment; but in equity, she is entitled to receive from them the proceeds. She cannot, therefore, be compelled to pay, with one hand, a sum which she is entitled to receive with the other. This con- *26 elusion is in accordance with, and sustained by the former opinion of this Court, in the case of the Executors of Harmon Alexander, deceased, v. Mary Miller. For, in that case, the Judge (Johnson) who delivered the opinion, says :
Rogers for the plaintiff.
Williams for the defendant.
“ The note or bill, the subject of this suit, being the evidence of a personal contract with the complainants’ testator, they are doubtless entitled, primafacie, to the possession of it; and the foundation of the right claimed by the defendant, to retain it, is, that the fund intended to be secured by it, probably belongs to the estate of Archibald Miller, deceased, and that, as administratrix de bonis non, she is entitled to the possession and disposition of it; and if this be. true, there can be no doubt that Equity would not interpose : for, admitting that the possession of the bill would entitle the complainants to- recover at law, yet, they would be bound to account to her, in Equity, for it, and an order for its delivery would drive the parties to that circuity of action, to prevent which is one of the most useful branches of Equity jurisdiction.”
It is therefore ordered and decreed, that the decree of the Chancellor be reversed ; that the complainant Mary Miller as administratix de bonis non of Archibald Miller deceased, be permitted to retain the note in dispute; that she do charge herself with the amount thereof, including principal and interest, in her accounts on the estate of Archibald Miller (deceased), in the Ordinary’s office of York District; that the defendants Albert Gr. Alexander and Eli 0. Alexander, executors of Harmon Alexander deceased, be perpetually enjoined from enforcing the judgment recovered by them at law, against Mary Miller, *Sarah Miller and Major T. Hall, on the said note; that the said defendants do, out of the estate of their testator, pay to the complainant the sum of $11 23 reported by the Commissioner, with the interest thereon ; and that they do also, out of the estate of their testator, pay the cost of the cases both in Equity and at law.
Johnson, J., concurred.
Harper, J., absent.

 M’Cullough v. Daniel,—This was a bill to enforce a decree of the Ordinary against the defendent as executor, to which he was a party by citation, and from which he had not appealed. The Court ordered an account before the Commissioner, without regard to the Ordinary’s decree — the Commissioner made a report in favor of the defendant, which was finally confirmed by the Court of Appeals, and the bill dismissed.